Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY LU HOPSON,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civil Action No. 16-6042 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Mary Lu Hopson ("Plaintiff") seeking review of Administrative Law Judge Teresa J. McGarry's ("ALJ" or "ALJ McGarry") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and/or XVI of the Social Security Act (the "Act"), respectively. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court VACATES ALJ McGarry's decision and REMANDS the case for further proceedings consistent with this Opinion.

**I.    BACKGROUND**

On October 18, 2012, Plaintiff filed a Title II application for DIB, alleging disability beginning April 15, 2006 through December 31, 2011. (D.E. No. 3, Administrative Record ("Tr.") at 17). The claim was denied initially on December 13, 2012, and again upon reconsideration on January 23, 2013. (*Id.*). Plaintiff subsequently filed a request for a hearing on January 30, 2013. (*Id.*). Plaintiff's request was granted, and Plaintiff and her husband (Plaintiff's witness) were scheduled to appear at a hearing September 25, 2014. (*Id.*).

1

At the September 25, 2014 hearing, ALJ McGarry notified Plaintiff and her attorney of an amended onset date of June 12, 2010.[1] (*Id.*). Plaintiff requested to speak to her attorney about the amended onset date, so the ALJ adjourned the hearing to January 16, 2015. (*Id.*). On October 14, 2014, however, Plaintiff's attorney withdrew his appearance. (*Id.*).

In preparation for her January 16, 2015 hearing, Plaintiff contacted over 50 lawyers. (*Id.* at 17, 37). In January 2015, Plaintiff came in contact with attorney David Glasser. (*Id*. at 17, 37). Three days before the hearing, on January 13, 2015, Mr. Glasser submitted a letter to ALJ McGarry requesting that the ALJ continue the case to allow Mr. Glasser an opportunity to meet with Plaintiff and enter an appearance. (*Id.* at 17). On January 16, 2015, Plaintiff nevertheless appeared at the hearing. (*Id.*). There, ALJ McGarry declined Mr. Glasser's request to continue the case and Plaintiff therefore represented herself. (*Id.*).

At the hearing, Plaintiff testified that she suffered from post traumatic stress disorder ("PTSD"), diabetes, sleep apnea, lower back pain, obesity, and asthma. (*Id.* at 67-68). Plaintiff's husband testified that Plaintiff had trouble walking down the street due to her physical ailments and that her PTSD affected her ability to focus on simple conversations and tasks. (*Id.* at 70-73).

On April 22, 2015, ALJ McGarry denied Plaintiff's application, finding that Plaintiff "was not under a disability, as defined by the Social Security Act, at any time from June 12, 2010, the alleged onset date, through December, 31 2011, the date last insured." (*Id.* at 28). Plaintiff requested an Appeals Council review, which was denied on August 5, 2016, rendering ALJ McGarry's decision final. (*Id.* at 1-5).

---

[1] Plaintiff was also denied disability benefits in a previous decision dated June 11, 2010, subsequent to an April 19, 2010 hearing held before Administrative Law Judge A. Morgan. (Tr. at 1-5). Plaintiff appealed that decision in federal court; the case was remanded and ultimately denied. (*Id.*). Since Plaintiff's alleged onset date of disability cannot be on or prior to the date of that prior decision, ALJ McGarry amended Plaintiff's alleged onset date to June 12, 2010. (*Id.*).

On September 28, 2016, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 8, Brief in Support of Mary Lu Hopson ("Pl. Br."); D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.")). The matter is now ripe for resolution.

## II. LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for DIB under Titles II and XVI of the Act, a claimant must establish that she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment(s) must be "of such severity that [s]he is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[2] At step five, the burden shifts to the Commissioner. *Id.*

---

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

***Step One.*** At step one, the claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id*. § 404.1520(b). If the claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two.*** At step two, the claimant must demonstrate that her medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulation's "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all

of the other evidence [i.e., it does not have to be consistent with all the other evidence] so long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

**B. Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III. ALJ MCGARRY'S DECISION

At step one of the analysis, ALJ McGarry found that Plaintiff had not engaged in substantial gainful activity ("SGA") from the alleged onset date of June 12, 2010 through the date late insured of December 31, 2011. (Tr. at 20).

At step two, ALJ McGarry found that Plaintiff suffered from the following severe impairments: asthma; obesity; and a history of PTSD. (*Id.*). The ALJ found these impairments severe "because they caused more than minimal limitation in the claimant's ability to perform basic work activities . . . ." (*Id.*).

At step three, ALJ McGarry found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404 . . . ." (*Id.* at 21). The ALJ further concluded that "[a]fter reviewing the record and as detailed further in this decision, no treating or examining physicians reported findings similar in severity, or equaling the criteria set forth for any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))." (*Id.* at 22). Regarding Plaintiff's obesity, the ALJ noted:

> Additionally, pursuant to SSR 02-01p, obesity is considered a medically determinable impairment and the combined effects of obesity with other impairments may be greater than considering each separately. Therefore, the effects of the claimant's obesity and other impairments received such consideration in reviewing not only the objective evidence, but also the claimant's subjective complaints. Consequently, I find the claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of a listed impairment (20 CFR 416.920(c)).

(*Id.*).

At step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a). (*Id.* at 22). In considering the RFC determination, Plaintiff was found to be unable to perform any past relevant work. (*Id.* at 26).

At step five, the ALJ determined that through the date last insured, based on Plaintiff's age, education, work experience, and RFC, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (*Id.* at 27). Accordingly, ALJ McGarry

7

found that Plaintiff was not disabled, as defined by the Act, and was therefore ineligible for DIB. (*Id.* at 28).

## IV. DISCUSSION

On appeal, Plaintiff argues (among other things) that (i) she was deprived of her right to counsel and prejudiced thereby (Pl. Br. at 11-27); (ii) the ALJ failed to consider Plaintiff's impairments individually and in combination as required in the step-three analysis (*id.* at 17-22); and (iii) the RFC determination was not based on substantial evidence, resulting in the Commissioner's failure to carry its burden at step five (*id.*). Plaintiff asks the Court to reverse the decision of the Commissioner or, in the alternative, remand this case to the Commissioner for a new hearing and decision. (*Id*. at 1).

### A. The record does not demonstrate that Plaintiff knowingly and intelligently waived her right to counsel.

Plaintiff first argues that she was denied her right to counsel and prejudiced thereby. (*Id.* at 11). Specifically, Plaintiff asserts that "the ALJ not only failed to obtain a knowing waiver of counsel, she actively deprived plaintiff of counsel after receiving a request to enter an appearance by an attorney." (*Id.* at 9).

Defendant counters that "Plaintiff was aware of her right to representation, did not appoint a representative for the January 16, 2015 hearing, and has not demonstrated prejudice as a result of that decision." (Def. Br. at 10). Defendant posits that Plaintiff "was experienced in the Social Security disability process in a way that demonstrated her awareness of her right to representation . . . [and] on September 25, 2014, the ALJ held a hearing where Plaintiff appeared with counsel." (*Id.* at 11). Furthermore, Defendant contends that "the ALJ's decision to control her hearing schedule—after Plaintiff had three months to engage new counsel—was a matter of scheduling

8

discretion; rather than a decision to deny Plaintiff's right to appoint [a representative]." (*Id.* at 13). And, in any event, Defendant maintains that Plaintiff did not suffer any prejudice as a result. (*Id.*).

In a disability proceeding, a claimant does not have a constitutional right to counsel, though they are permitted to bring counsel to the hearing. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). Additionally, a lack of counsel by itself is not a sufficient cause for remand. *Bentley v. Comm'r of Soc. Sec.*, No. 10-2714, 2011 WL 4594290, at *9 (D.N.J. Sept. 30, 2011). Rather, the ALJ must ensure that the claimant is given notice of her right to counsel and that the claimant waived her right knowingly and intelligently. *Vivaritas*, 264 F. App'x at 157-58.

In *Vivaritas*, the Third Circuit examined a *pro se* claimant's waiver of the right to representation to determine whether such waiver was knowing and intelligent. *See id* at 157-59. In that case, the ALJ began the administrative hearing by acknowledging the claimant's *pro se* status and explicitly informing her that she had "the right to have a representative," though she was "not required to have one." *Id.* at 158. The ALJ then attempted to confirm that the claimant fully understood her rights by engaging in the following exchange:

> ALJ: Let me first explain to you what a representative could do for you. A representative could help you to gather medical records and other documents in support of your case. A representative could help you to organize your case and could help you to present your case before an Administrative Law Judge. There may be representatives that do not charge any money. Have you given any thought to getting a representative?
>
> CLMT: I was—I went to check into legal aide [sic] because I can't afford [sic] and they say—I think they're on Summit or something. I was looking for it, but I couldn't find it.
>
> ALJ: Okay. Well, let me explain to you what your options are today. First, let me tell you that it's perfectly possible to have a fair hearing either with a representative or without a representative. It's purely a personal choice of yours. It—so you have two choices today. You can either choose to proceed today with the hearing without a representative or I could give you

9

an adjournment of 30 days to give you a chance to get a representative. If you choose to proceed today and if I notice during the hearing that there are any documents that are missing from your record that I need, I can take steps through my office to get those and add them to your file. Also, if you proceed today and for some reason you are not happy with the [d]ecision that I make, you would be free to appeal that [d]ecision and you could get a representative at that time if you so chose [sic]. So what is your [d]ecision? Do you want to proceed or do you want to have a chance to get a representative?

CLMT: Well, I'm going to proceed.

ALJ: You want to proceed today?

CLMT: Yeah.

*Id.* at 158-59.

The Third Circuit explained that the quoted ALJ colloquy would ordinarily "be sufficient to establish that a claimant waiving her right to counsel during an ALJ hearing acted knowingly and intelligently."[3] *Id.* at 159; *see also Yakely v. Astrue*, No. 12-0857, 2013 WL 1010671, at *3-4 (D.N.J. Mar. 13, 2013); *Curry v. Barnhart*, No. 05-2350, 2006 WL 1192920, at *2-3 (E.D. Pa. Jan. 25, 2006), *adopted by* 2006 WL 964103 (Apr. 13, 2006).

Plaintiff contends that the ALJ actively denied her right to counsel even after obtaining Mr. Glasser's request to enter an appearance in this case. (Pl. Br. at 11). Below is the relevant excerpt of the ALJ's decision to deny Plaintiff's continuance:

ALJ: so [Mr. Glasser] is not yet your attorney at this point and time. And he indicates there was insufficient time for the office to enter an appearance and to prepare for the hearing. He indicated if this hearing is continued, the office will enter an appearance. Why did you wait until January to contact this person?

CLMT: I have contacted over 50 lawyers.

ALJ: Okay.

---

[3] The Third Circuit ultimately concluded that the claimant in that action did not knowingly and intelligently waive her right to counsel because she suffered from a mental disorder. *See Vivaritas,* 264 F. App'x at 159-61.

> CLMT: Who have refused to represent me and not because they've seen the file but because of the disapproval ratings that Jacksonville has. That's what I have been told by the attorneys themselves.
>
> ALJ: Well, again, no attorney has to take the case.
>
> CLMT: Right.
>
> ALJ: I can't speak about that.
>
> CLMT: Mm-hm.
>
> ALJ: Does Mr. Glasser understand the date last insured issue in this case
>
> CLMT: Well that's where everything is kind of confused . . . .
> . . .
>
> ALJ: All right, let me do a couple of things first. I'm going to do this because I do want to move this case on and Mr. Glasser has not officially appeared and I'm not sure he would appear if he knew now that the case has been declined by the Appeals court, I don't know, but this case needs to move. Therefore, . . . I will be writing Mr. Glasser back to say I did not continue the case and that you may or may not contact him afterwards but . . . I did not continue the case. I need you to understand, I will be glad to take any documents that you want to present, but by law I still have only a short period in front of me. . . .
>
> CLMT: okay

(Tr. at 37-38, 45-46).

Given the circumstances of this case, the Court finds that the ALJ's comments and discussion were insufficient to elicit a knowing and intelligent waiver. Though the Court agrees with Defendant that Plaintiff was aware she could obtain counsel due to her ability to do so in prior hearings (*see* Def. Br. at 11), the exchange reproduced above between the ALJ and Plaintiff is insufficient to constitute a knowing and intelligent *waiver* of that right. *See Yakely*, 2013 WL 1010671, at *3-4 (holding that claimant's waiver was not knowing and intelligent where "the ALJ failed to confirm that [claimant] understand that her 'representative' could be an attorney who (1) could meaningfully assist her presentation to the ALJ, and (2) might work on either a pro bono or

11

a contingency fee basis"); *Curry*, 2006 WL 1192920, at *2-3 (finding that claimant's waiver was not knowing and intelligent where the ALJ did not, among other things, "explain the importance of having an attorney present" or "offer to re-convene the hearing when [the claimant] had secured the services of an attorney"). On the contrary, the ALJ declined Mr. Glasser's "request[] to continue the case so he may meet with claimant and enter an appearance." (Tr. at 17). The ALJ's decision to decline Mr. Glasser's request appears to be motivated by the ALJ's desire to "move this case on." (*Id.* at 45; *see also id.* at 46 (ALJ noting that "this case needs to move")). However, "[t]he ALJ's apparent quest for expediency can never override a claimant's right to counsel." *Curry*, 2006 WL 1192920, at *3.

### B. It appears that Plaintiff suffered prejudice because the ALJ could not have adequately developed the record.

"A lack of counsel, itself, is not sufficient cause for remand." *Yakely*, 2013 WL 1010671, at *5; *Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190 (3d Cir. 2003). The Court may remand a social security matter for further proceedings, however, if it appears either that lack of counsel prejudiced the claimant or that the administrative proceedings were marked by unfairness. *See Vivaritas*, 264 F. App'x at 158; *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal."). The Court must thus examine the administrative record for evidence of prejudice or unfairness. *See Yakely*, 2013 WL 1010671, at *5.

Allocation of the burden of proof informs that examination. *Id.* "While a claimant represented by counsel is presumed to have made [her] best case before the ALJ, no such presumption attaches to an unrepresented claimant." *Vivaritas*, 264 F. App'x at 158. "Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of a

12

claimant's rights." *Id.* Here, because the ALJ did "not obtain a valid waiver of counsel, the burden is on the Commissioner to show [that] the ALJ adequately developed the record." *Id.*

Plaintiff argues in part that (i) she was denied a reading of the legal issues and an explanation of the role of the vocational expert (Pl. Br. at 9-10); (ii) no medical evidence before June 2010 or after December 2011 was considered, even though the evidence was necessary in that it implicates "the same impairments plaguing plaintiff currently during the adjudicated period" (*id.* at 17); and (iii) as a result, Plaintiff's obesity, lower back impairments, and PTSD were not properly addressed (*id.* at 16-17).

As to Plaintiff's first argument, the Court agrees with Defendant that the ALJ explained the role of the vocational expert at length during the hearing and notified Plaintiff that she may present her own questions to the vocational expert, which Plaintiff subsequently did. (*See* Def. Br. at 14; Tr. at 54, 81-84).

As to Plaintiff's remaining arguments, Defendant contends that the ALJ considered evidence prior to June 2010 and following December 2011 because "the ALJ stated that she made her findings 'after consideration of the entire record' and we should take her at her word." (Def. Br. at 15). Defendant further counters that the ALJ discussed obesity on several occasions and that the ALJ was not required to address Plaintiff's lower back impairment since it was not within the adjudicated time-frame. (*Id.* at 15-16). In support of his argument, Defendant relies on *Reid v. Comm'r of Soc. Sec.* and *Wall v. Astrue*. (*See id.* at 15 (citing 769 F.3d 861, 865 (4th Cir. 2014) and 561 F.3d 1048, 1070 (10th Cir. 2009), respectively)). Those decisions are inapposite, however, as neither discusses an unrepresented claimant nor addresses issues with the relevant medical timeframe.

Here, the hearing transcript demonstrates that Plaintiff did not understand the relevant medical timeframe (Tr. at 38-40), the outcome of her previous disability hearing (*id.* at 40-41), the effect of the prior outcome on her pending application (*id.* at 45-48), or what papers were submitted by her prior attorney (*id.* at 45, 49-51). The cumulative effect of the foregoing facts suggests that the ALJ could not have adequately developed the record if Plaintiff could not, as demonstrated by the hearing transcript and her lack of understanding, provide the information necessary for the ALJ to do so.

As to Plaintiff's argument that the ALJ did not properly consider her PTSD (Pl. Br. at 17), the record reflects that the ALJ acknowledged that "[t]he claimant also alleged [PTSD] and affective disorder through her DLI" (Tr. at 21). But the ALJ found the "mental allegations to be non-medically determinable impairments per the Regulations for the time covered in this hearing." (*Id.*). At the hearing, Plaintiff explained that she sought treatment for PTSD during the relevant timeframe but was unable to receive treatment due to her inability to pay for it. (*Id.* at 65-66 (Plaintiff testifying that "[my attorney t]old me that if I go through my insurance and because it's a work related injury that I would be charged for it. The insurance company would be charged for it but they would deny it and then I would have to pay it out of my pocket which I wasn't able to do . . . .")). And under SSR 96-7p, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p. In fact, an "ALJ's failure to address and/or consider Plaintiff's statement regarding [her] inability to afford medical treatment constitutes an error warranting remand pursuant to SSR 96-7p." *Torres v. Comm'r of Soc. Sec.*, No. 15-6344, 2016 WL 5339724, at *4 (D.N.J. Sept. 23, 2016); *see also Diggs v. Colvin*, No. 13-4336, 2015 WL 3477533, at *2 (E.D. Pa. May 29, 2015) ("I find that the

14

ALJ's failure to consider whether Plaintiff could afford medical treatment and medication due to the state of her insurance coverage was an error that requires remand.").

Based on the ALJ's decision, it is unclear whether the ALJ considered Plaintiff's explanation for her inability to seek PTSD treatment. (*Compare* Tr. at 25 ("The claimant also indicated she began treatment for her PTSD in 2012; she has impaired memory and concentration issues; and that her attorney told her not to attend mental health treatment as she would have to pay for it out of pocket.") *with id.* at 21 ("however, after carefully examining the entire record, no treating provider/physician reported any substantive findings regarding [PTSD and affective disorder] or connected treatment during the limited time frame of this hearing")). Rather, it would appear that the ALJ drew negative inferences from Plaintiff's failure to seek treatment—in direct contradiction of SSR 96-7p. (*See id.* ("However, there is no indication that the claimant scheduled a session with a therapist prior to the date last insured in this case. Therefore, I find mental allegations to be non-medically determinable impairments per the Regulations for the time covered in this hearing.")). For these reasons, the Court again concludes that Plaintiff was prejudiced by lack of counsel and the ALJ's failure adequately to develop the record.[4]

---

[4] Further to this point, Defendant recognizes that "Plaintiff argues that the ALJ failed to consider evidence prior to June 2010 or following December 2011." (Def. Br. at 15). Defendant counters, however, that "the ALJ stated that she made her findings . . . 'after consideration of the entire record' and we should take her at her word." (*Id.* (citing Tr. at 20)). In support of this argument, Defendant relies on *Reid v. Commissioner of Social Security* for the proposition that "the Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and *absent evidence to the contrary*, we take her at her word." (*Id.* (citing 769 F.3d 861, 865 (4th Cir. 2014)) (emphasis added).

Here, the ALJ stated at the hearing that she would not consider evidence prior to June 12, 2010 or past December 2011. (*See* Tr. at 46 ("I understand your desire to show your credibility but I cannot accept any doctor discussions prior to June 12, 2010."); *id.* at 48 (" . . . I can't consider anything prior to June of 2010 . . . ."); *id.* at 51 ("Your file has lots of records in it, but a lot of those continue past December of 2011 and I can't consider that evidence. So what the doctors are saying about you now in 2014, 2013 and 2012 even is not what I have to weigh and make a decision on. It is that year and a half period of time.")). Accordingly, Defendant's argument that the ALJ considered the entire record is unpersuasive.

Accordingly, the Commissioner has failed to carry the burden of proving that the ALJ adequately developed the record. In light of the Court's finding, the Court need not address Plaintiff's alternative arguments.

## V. CONCLUSION

For the foregoing reasons, the Court VACATES ALJ McGarry's decision and REMANDS the case for further proceedings consistent with this Opinion. An appropriate Order accompanies this Opinion.

The Court anticipates that Plaintiff, who has appealed her case with the assistance of counsel, will be represented by an attorney on remand. If she decides, however, to proceed on remand without counsel, "the ALJ should explain her right to have counsel and counsel's availability in full detail." *Vivaritas*, 264 F. App'x at 161. "[A]nd if [she] insists on proceeding pro se, the ALJ should develop the record with respect to" all of the issues that Plaintiff has raised to this Court on appeal. *Id.*

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
